RICHARD F. PARK *vs.* SAMUEL T. JOHNSON.

One who has agreed to convey three lots of land, two of which are represented in the contract to be subject to a mortgage for $1750 each, and the third to a mortgage for $1600, amounting in all to $5100, cannot maintain a bill in equity against the purchaser for specific performance, if it appears that in fact the first two lots are each subject to a mortgage for $1000 and the third to two mortgages amounting together to $1600, and that there is a fifth mortgage upon all of the lots for $1500; although after the tender of his deeds he has tendered an executory agreement by the assignee of the last mortgage that either of the first two lots shall be released from it upon payment of $750.

An order or decree in a suit in equity may be varied at any time before the entry of the final decree.

If the plaintiff in a suit in equity for specific performance of an agreement for an exchange of lands cannot give the title mentioned in the agreement, the bill may be dismissed, although the objection is not stated in the answer, or taken until the hearing before a master to whom the case has been referred to receive a proper conveyance.

BILL IN EQUITY to enforce specific performance of the following contract:

"Agreement made this 27th day of October A. D. 1860, by and between Richard F. Park, of Chelsea, and Samuel T. Johnson, of Charlestown, both in Massachusetts, witnesseth, That the said Park agrees to sell to said Johnson, for the consideration hereinafter mentioned, two houses on Second Street, in said Chelsea, [here followed a description of the land,] subject to a mortgage of $1750 on each house, and the interest due thereon ; also a house and land on Poplar Street, in said Chelsea, [here followed a description of the land,] subject to a mortgage for $1600, and the interest due thereon.  And the said Park agrees to make, execute, acknowledge and deliver the deeds necessary to convey said estates, with release of dower and homestead ; and the said Johnson agrees to buy said houses, and pay him therefor as follows : by making, executing and delivering and acknowledging to said Park the necessary deeds for conveying to said Park, with release of dower and homestead, the old Deacon Travers Farm in West Natick, of Middlesex County, Massachusetts, containing ninety acres more or less, subject to a mortgage for $1900, with the interest due thereon. It is understood that the mortgages on said Park's houses, in all, amount to $5100 (fifty-one hundred dollars)."

After the former decision, (see 4 Allen, 259,) it was ordered and decreed that the written contract, with the parol addition, as proved, and assented to by the plaintiff, ought to be carried into execution according to the true intent and meaning of the parties ; and that, upon the execution and delivery by the plaintiff to the defendant, at such time and place as should be appointed by a master in chancery named for that purpose, of a proper conveyance or conveyances, as of the 27th of October 1860, of the said estates as set forth in the contract, with release of dower and homestead, and subject to mortgages on said estates amounting in all to $5100, with interest due thereon October 27th 1860, and accounting for the net rents and profits of said estates subsequent to that date, and delivering to the defendant the watch and chain included in the parol agreement,

the defendant should thereupon execute, acknowledge and deliver to the plaintiff a proper conveyance of the Deacon Travers Farm, &c.; all such conveyances to be settled by the master, if the parties should differ as to the same. Other matters were also mentioned in said decree which are now immaterial.

The master reported, amongst other things, that the two lots upon Second Street were each subject to a mortgage for $1000, and the lot upon Poplar Street to a mortgage for $1000, and another mortgage for $600, and that there was another mortgage upon all three of the lots for $1500, the last named mortgage containing a stipulation that the lot upon Poplar Street should be released therefrom upon payment of $300 ; the mortgages amounting together to $5100. The defendant objected to the deeds tendered by the plaintiff, on the ground that they did not convey such a title as was stipulated for in the contract.

On the day after the tender of the plaintiff's deed, he also tendered a written agreement dated December 6, 1862, executed and acknowledged by Joseph F. Wilson, the assignee of the $1500 mortgage, reciting that it was the original understanding and agreement between the mortgagor and mortgagee that upon the payment of $750 and interest either of the houses upon Second Street should be released from the mortgage, and agreeing that, upon such payment at any time before absolute foreclosure of the mortgage, he would release either of said houses, to take effect as of October 1860. The defendant objected to receiving this agreement.

The case came on for a hearing upon the master's report, and was thereupon reserved for the consideration of the full court.

*M. Chamberlain,* for the plaintiff.

*P. Willard,* for the defendant.

DEWEY, J. This case comes before us upon the report of a master to whom the same was referred by an order of this court, after the general hearing and adjudication on the merits of the case as then presented by the parties. The general purposes of this reference, it will be seen by the order, were to have the parties appear before the master and execute proper conveyances

to carry into effect their written contract, and to have reported to this court an account of the rents and profits of the parcels of land for which each party was chargeable, and the amount of interest due on certain mortgages, and the damages to be paid by the defendant for not procuring a release of dower by his wife.

The plaintiff appeared before the master and tendered two deeds, as proper and sufficient to be executed by him in fulfilment of the contract. The master reports that the defendant objected to the same that they did not conform to the stipulations contained in the written agreement of the parties in regard to the number and amount of the existing mortgages upon the said parcels of land. The facts as to this are fully stated in the report of the master. The ground of complaint is, that each of the estates is charged with a much larger sum than that stated in the agreement as the amount they were severally liable for. This is said to result from the existence of a mortgage for $1500 which covered all three of the lots which the plaintiff agreed to convey. It appeared that the lots upon Second Street were incumbered, in addition to a mortgage for $1000 on each, with this mortgage for $1500, thus making the incumbrance on each lot $2500 instead of $1750, and that the lot upon Poplar Street was incumbered to the amount of $300 more than was stated in the contract. This is undoubtedly a material variance from the contract, which stated that the lots upon Second Street were each subject to a mortgage of $1750, and that the lot upon Poplar Street was subject to a mortgage for $1600; for the person having the equity of redemption could not redeem either of the lots upon Second Street without paying $2500, nor redeem the lot upon Poplar Street without paying $1900.

The plaintiff contends that the deeds tendered by him are sufficient, and entitle him to a conveyance by the defendant of the land stipulated to be conveyed on his part. It is insisted that these deeds offered by the plaintiff are in compliance with the decree made by this court in the case, and that the decree concludes the rights of the parties, and that the master was not authorized to go beyond it. As to this, it is to be remarked that

a former order and decree of this court would not necessarily preclude the correction of any error made obvious to the court, and sought to be corrected before a final decree has been made and recorded. *Gibson* v. *Crehore*, 5 Pick. 157. But, on looking at the decree and order for reference to the master, the court are of opinion that it is not to be understood in the sense attributed to it by the plaintiff. It was the written contract made by the parties that was to be carried into execution. That contract is fully recited in the order. By it the mortgages are stated to be for $1750 on each house on Second Street, and for $1600 on the house and land on Poplar Street. This is not controlled by the statement introduced at the close, that the mortgages " in all amount to $5100." We cannot suppose that the recital in the order, that the conveyance was to be made of said estates " subject to mortgages on said estates, in all amounting to $5100," was intended as a decree of the court that such was the legal effect of the contract, in distinction from that of an agreement to convey lots having separate mortgages for a particular sum on each. No such question had been raised before us. The plaintiff had throughout all the previous proceedings assumed that he was able to fulfil the contract according to its terms. The questions at issue had been as to other points.

The inquiry arises, whether this defence to the bill may be made at this late stage of the case. It was open to the defendant to set it up in his answer, and in many cases, if not generally, similar questions will be found to have been thus raised. It may also be raised upon a distinct application to the court to refer the question of the plaintiff's title or legal capacity to make the stipulated conveyance to a master, to report thereon. But when no such question has been presented, and the court, under the assumption that the plaintiff can do what in his bill he alleges he is ready to do, have referred the case to a master to see that proper deeds are made to pass the estate, and thereupon it appears that the deeds tendered, as well as the title exhibited to the master, show that incumbrances exist inconsistent with the title to be conveyed by the plaintiff, and which incapacitate him from making the stipulated conveyance, the master

may report that fact for the further direction of the court. This was so allowed in the case of *Warren* v. *Richardson,* Younge, 1. That was a bill seeking the specific performance of an agreement to accept a lease. The chief baron says: " The master, with a view to settling the lease, has looked to a certain extent into the title. In every case of specific performance this must be done. He has done so in this case, and the result has been that circumstances are disclosed which show that the plaintiff can make no valid title to the lease which he has undertaken validly and effectually to grant." This was after a decree for specific performance by the defendant, and upon an order to the master to settle the lease.

We think that in the case before us the same rule should be adopted. Under the order directing " all such conveyances to be settled by the master, if the parties differ," and that " the parties are to produce before and leave with the said master all deeds relating thereto," and the further provision in the order, that " all further directions are reserved until the coming in of the master's report," this question of the plaintiff's capacity to execute a proper conveyance should be open to the defendant.

The case as presented to the master showed an inability on the part of the plaintiff to give such a conveyance as he had contracted to give, each particular lot being incumbered to a greater amount than was set forth in the contract. It is well settled that the court will not compel a purchaser to take a doubtful title, or one subject to incumbrances more onerous than those stated in the contract. 2 Dan. Ch. Pr. 1195, *note.* *Richmond* v. *Gray,* 3 Allen, 25.

The next inquiry is, as to the effect of a certain instrument executed by J. F. Wilson, the assignee of the $1500 mortgage. The purpose of this instrument, as alleged by the plaintiff, was to make the amount of incumbrances on the lots upon Second Street $1750 upon each. This was proposed to be effected by a stipulation by Wilson that upon the payment of $750 and interest either of those lots should be released from the $1500 mortgage, thus leaving them severally incumbered with a distinct mortgage of $1000 and one half of the $1500 mortgage

Assuming that it was competent for the plaintiff to show that the legal title stipulated to be conveyed had vested in him at the time when the deeds were to be passed, yet the inquiry arises whether this instrument thus tendered the day after the plaintiff had tendered his deeds, if in time, was sufficient to effect that object. It was an executory agreement only, promising to release either of those lots from the $1500 mortgage upon payment of $750 and interest, before foreclosure was effected. This was no present discharge of any portion of the amount secured by said mortgage. It might answer the purposes of the purchaser, or it might not. But it failed to place the property in the same legal position in which it would have been if subject to a mortgage of $750 on each lot. If the party would rely on a title acquired at this late stage of the proceedings, it ought to be an unquestionable title, and in accordance with the written agreement. But further, this instrument did not release the lot upon Poplar Street from the incumbrance of $300 beyond the sum stated in the agreement. There was no agreement by the assignee of the $1500 mortgage that the payment of $750 for the discharge of either of the lots upon Second Street from the $1500 mortgage should release the lot upon Poplar Street, which was incumbered by the same mortgage to the amount of $300, from its liability under it. It stood charged with this amount beyond the incumbrance of $1600, stated in the agreement to be the amount of the mortgage thereon.

The plaintiff has attempted to hold the defendant to the strict performance of the terms of this agreement on his part, although the defendant has insisted that the bargain was an unequal one, and attended with great pecuniary loss to him, if enforced. We think the plaintiff should have been able to make a conveyance fully carrying out his agreement as to the state of his title to the lands which he was to convey to the defendant. This he has failed to do, and the result must be that the bill be dismissed.

As to costs, the order of the court is that no costs be allowed to either party prior to the hearing on the order of reference to the master. Costs are allowed in favor of the defendant subsequent to that time.